IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **DOMINIC CURRY** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. WGC-09-830 |
| | ) | |
| **J. C. PENNEY CORPORATION, INC.** | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## **MEMORANDUM OPINION**

Plaintiff Dominic Curry ("Mr. Curry") brought this action against Defendant J. C. Penney Corporation, Inc. ("J. C. Penney") alleging negligence and seeking damages in the amount of one million dollars ($1,000,000). The parties consented to proceed before a United States Magistrate Judge for all further proceedings in the case and the entry of a final judgment. *See* Document No. 9. The case was referred to the undersigned. *See* Document No. 11. Pending before the Court and ready for resolution is J. C. Penney's Motion for Summary Judgment (Document No. 15). Mr. Curry filed an Opposition (Document No. 16) and J. C. Penney a Reply (Document No. 17).

Both parties request an oral hearing. *See* Document Nos. 15, 16. No hearing is deemed necessary and thus both requests for oral hearing are **DENIED**.

On March 5, 2010 Mr. Curry filed "Plaintiff's Response to Defendant's Reply to Plaintiff's Response in Opposition to Defendant's Motion for Summary Judgment" (Document No. 18). "Plaintiff's Response to Defendant's Reply" is, in fact, a surreply. On March 8, 2010 J. C. Penney moved to strike Mr. Curry's surreply. *See* Document No. 19. On March 11, 2010 Plaintiff filed a Motion for Leave to File Surreply (Document

1

No. 20) as well as an Opposition to Defendant's Motion to Strike Plaintiff's Surreply (Document No. 21).

Local Rule 105.2.a (D. Md. 2009) states in pertinent part

> Unless otherwise ordered by the Court, all memoranda in opposition to a motion shall be filed within fourteen (14) days of the service of the motion and any reply memoranda within fourteen (14) days after service of the opposition memoranda. Unless otherwise ordered by the Court, surreply memoranda are not permitted to be filed.

The Court did not instruct Mr. Curry to file a surreply memoranda. Only after J. C. Penney moved to strike Mr. Curry's surreply did Mr. Curry file a motion for leave to file a surreply. Because Mr. Curry failed to comply with the Local Rules by *obtaining the Court's permission* to file a surreply *before* filing his surreply, the Court hereby **GRANTS** Defendant's Motion to Strike Plaintiff's Surreply (Document No. 19) and **DENIES** Plaintiff's Motion for Leave to File Surreply (Document No. 20).

Having resolved all preliminary matters, the Court now rules pursuant to Local Rule 105.6 (D. Md. 2009).

## **BACKGROUND**[1]

Sometime during the afternoon of April 24, 2008 Mr. Curry delivered his car to the Sears Auto Center for service. He then proceeded to the J. C. Penney store located at the St. Charles Town Center, 11130 Mall Circle, Waldorf, Maryland, waiting for his wife to pick him up.

---

[1] In determining whether the moving party has shown there are no genuine issues of any material fact, this Court must assess the factual evidence and all inferences to be drawn therefrom in the light most favorable to the nonmoving party. *Tinsely v. First Union Nat'l Bank*, 155 F.3d 435, 438 (4th Cir. 1998).

While walking around, browsing in the housewares department an object struck Mr. Curry on the head. He believed he momentarily blacked out. When he regained consciousness, Mr. Curry realized he was on the floor.

> I heard a woman with an accent, a Caribbean accent, say don't move, don't move. Don't try and get up. Don't move. Just stay right there. While she was talking, my phone rang and she answered my phone and then spoke to my wife and told her where we were and what had happened, that a box fell on me.

Mem. Fact & Law Supp. Def.'s Mot. Summ. J. ("Def.'s Mem."), Ex. 1 (Curry Dep. 28:3 – 9); Mem. Fact & Law Supp. Pl.'s Opp'n Def.'s Mot. Summ. J. ("Pl.'s Opp'n"), Ex. 5 (Curry Dep. 28:3 – 9).

## JURISDICTION AND VENUE

Subject matter jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332. Mr. Curry resides in Waldorf, Maryland. *See* Am. Compl. J. C. Penney is incorporated in the State of Delaware and its principal place of business is Plano, Texas. Document No. 1 ¶ 6. The amount in controversy exceeds $75,000, exclusive of interest and costs. *See id.* ¶ 7.

Pursuant to 28 U.S.C. § 1391 venue is proper in this district because a substantial part of the events or omissions giving rise to the claim occurred in this district. The Court notes J. C. Penney removed this case from state court to federal court. *See* Document No. 1.

## STANDARD OF REVIEW

A motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986);

*Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Properties*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979); *Stevens v. Howard D. Johnson Co.*, 181 F.2d 390, 394 (4th Cir. 1950). The moving party bears the burden of showing that there is no genuine issue as to any material fact. Fed. R. Civ. P. 56(c); *Pulliam Inv. Co.*, 810 F.2d at 1286 (citing *Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979)).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion. *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985). A party who bears the burden of proof on a particular claim must factually support each element of his or her claim. "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.

On those issues where the nonmoving party will have the burden of proof, it is that party's responsibility to confront the motion for summary judgment with an affidavit or other similar evidence. *Anderson*, 477 U.S. at 256. However, "'[a] mere scintilla of evidence is not enough to create a fact issue.'" *Barwick v. Celotex Corp.*, 736 F.2d 946, 958-59 (4th Cir. 1984) (quoting *Seago v. North Carolina Theaters, Inc.*, 42 F.R.D. 627, 632 (E.D.N.C. 1966), *aff'd*, 388 F.2d 987 (4th Cir. 1967), *cert. denied*, 390 U.S. 959 (1968)). There must be "sufficient evidence favoring the non-moving party for a jury to

return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

## DISCUSSION

*A.     Overview – Premises Liability*

Before addressing the parties' positions regarding genuine issues as to any material fact, the Court must address some preliminary matters. Since this Court's jurisdiction is based on diversity of citizenship, the principles outlined in *Erie Railroad Co. v. Tompkins*, 304 U.S. 64, 78 (1938) require the application of Maryland law to substantive law questions. Under Maryland law a property owner owes a certain duty to an individual who comes in contact with the property, and the scope of the duty owed is dependent upon the individual's status while on the property. *Baltimore Gas & Elec. Co. v. Flippo*, 348 Md. 680, 688, 705 A.2d 1144, 1148 (1998). Maryland law recognizes four categories of individuals: (1) an invitee, (2) a licensee by invitation, (3) a bare licensee, and (4) a trespasser. An invitee is an individual who is on the property for a purpose related to the landowner's business. "An occupier of land has a duty to use reasonable and ordinary care to keep the premises safe for an invitee and to protect him from injury caused by an unreasonable risk that the invitee, by exercising ordinary care for his own safety, will not discover." *Henley v. Prince George's County*, 305 Md. 320, 339, 503 A.2d 1333, 1343 (1986).

A licensee by invitation is a social guest and the landowner "owes a duty to exercise reasonable care to warn the guest of dangerous conditions that are known to the [landowner] but not easily discoverable." *Flippo*, 348 Md. at 689, 705 A.2d at 1148

5

(citation omitted). For a bare licensee, a person on the property with permission but for his/her own purposes, a landowner only owes a duty to refrain from willfully or wantonly injuring the bare licensee and to refrain from creating "'new and undisclosed sources of danger without warning the [bare] licensee.'" *Id.* (citation omitted). For a trespasser, someone who intentionally and without permission enters another's property, a landowner owes no duty except refraining from willfully or wantonly injuring or entrapping the trespasser.

On April 24, 2008 Mr. Curry was a customer at the J. C. Penney store at St. Charles Town Center. He visited the store, walking around and browsing the merchandise as he waited for his wife to pick him up. Mr. Curry was in the store for a purpose related to J. C. Penney's business. Mr. Curry was thus an invitee on April 24, 2008.

*B.    Negligence*

Under Maryland law negligence means doing something a person using reasonable care would not do, or not doing something a person using reasonable care would do. *Maryland Civil Pattern Jury Instruction* 19:1. Ordinary or reasonable care means "that caution, attention or skill a reasonable person would use under similar circumstances." *Id.* To establish a *prima facie* case of negligence, Mr. Curry must prove (1) a duty owed to him by J. C. Penney, (2) a breach of that duty, (3) causation, and (4) damages. *B.N. v. K.K.*, 312 Md. 135, 141, 538 A.2d 1175, 1178 (1988).

J. C. Penney owes a duty of ordinary care to keep its premises safe for an invitee such as Mr. Curry. That duty is defined as follows

> [A]n owner or occupier of land only has a duty to exercise reasonable care to "protect the invitee from injury caused

6

> by an unreasonable risk" that the invitee would be unlikely to perceive in the exercise of ordinary care for his or her own safety, and about which the owner knows or could have discovered in the exercise of reasonable care. The duties of a business invitor thus include the obligation to warn invitees of known hidden dangers, a duty to inspect, and a duty to take reasonable precautions against foreseeable dangers.

*Tennant v. Shoppers Food Warehouse Md. Corp.*, 115 Md. App. 381, 388, 693 A.2d 370, 374 (1997) (internal citations omitted).

J. C. Penney is not an insurer of Mr. Curry's safety while Mr. Curry is on its premises. "[N]o presumption of negligence on the part of the owner arises merely from a showing that an injury was sustained in his store." *Moulden v. Greenbelt Consumer Servs., Inc.*, 239 Md. 229, 232, 210 A.2d 724, 725 (1965).

Mr. Curry contends J. C. Penney breached its duty by "negligently stacking the cookware in an unsafe manner . . . fail[ing] to warn of the dangerous condition, fail[ing] to remedy the dangerous condition in a reasonable amount of time, fail[ing] to maintain adequate safety standards in a retail shopping store and . . . negligently supervis[ing] the store staff and employees." Am. Compl. ¶ 8.

Mr. Curry does not recall much about the accident but testified as follows at his deposition.

> Q: When I said do you know where the box fell from and you said I do now.
>
> A: I said I do now. I do now because the woman said that the box fell on me. The word "fall" means it had to come up from somewhere and I know that I wasn't on the floor already, so it had to be above me, so I said that I know now.
>
> Q: Okay. So you know nothing more as to where the box came from other than it fell?

>A: I have a great idea, yeah, on the top shelf.
>
>Q: What's the basis for that idea?
>
>A: The box that was sitting on the floor beside me was missing as the pictures show from the top shelf, and that's the box that at the moment whoever was there, the paramedics, the woman with the accent and that was pretty much it, the woman with the accent and the paramedics were talking about fell.
>
>Q: What caused the box to fall?
>
>A: I do not know.
>
>Q: Did you see anything defective with the shelf?
>
>A: No.
>
>Q: Did you see the shelf broken?
>
>A: No.

Def.'s Mem., Ex. 1 (Curry Dep. 34:2 – 35:4).

>Q: You didn't see anybody reaching for a box?
>
>A: No.
>
>Q: And it's your testimony you weren't reaching for a box?
>
>A: No, never.
>
>Q: Did you ever tell anybody at the accident scene that you were reaching for a box?
>
>A: No.

*Id.*, Ex. 1 (Curry Dep. 37:17 – 38:2); Pl.'s Opp'n, Ex. 5 (Curry Dep. 37:17 – 38:2).

>Q: Have you ever seen anything defective with the shelf?
>
>A: That particular shelf?

> Q: Yes, that shelf where you were injured.
>
> A: No.
>
> Q: Can you give an explanation as to how or why a box fell?
>
> A: I have no idea.
>
> Q: Do you know what box struck you?
>
> A: No.
>
> Q: Do you know how many boxes struck you?
>
> A: I don't know, no.
>
> Q: What were you doing when you were struck by the box?
>
> A: Browsing in J. C. Penney.
>
> Q: Were you stationary or were you walking?
>
> A: I don't remember.
>
> Q: Are you claiming that you were unconscious at any time after this accident?
>
> A: For a short period. I'm not sure how long of a period, but I blacked out for a moment.

Def.'s Mem., Ex. 1 (Curry Dep. 39:13 – 40:11); Pl.'s Opp'n, Ex. 5 (Curry Dep. 39:13 – 40:11).

There is no evidence that an employee of J. C. Penney stacked the cookware box in an unsafe manner on the top of the shelf. In his Opposition to J. C. Penney's motion for summary judgment Mr. Curry attached as an exhibit the deposition of John Dockery, Assistant Manager of the J. C. Penney store at St. Charles Town Center. Mr. Dockery was asked how frequently J. C. Penney employees inspect items stacked on shelves.

9

> Q: Do you know when the shelves in question, when the last time that they were stocked or the last time an employee came by to inspect them?
>
> A: The shelves? Everybody. We look at the shelves every day. We look at the entire floor every day, so I couldn't give you an exact time when somebody actually came by and looked at that particular shelf.
>
> Q: Okay.
>
> A: But it's maintained by the entire store [staff] that's around.

Pl.'s Opp'n, Ex. 4 (Dockery Dep. 24:7 – 17).

Later Mr. Dockery answered questions about the placement of cookware boxes on the top shelf.

> Q: Are these boxes that are stacked up on that shelf where this incident occurred, are they double stacked typically?
>
> A: No.
>
> Q: So there would just be one item on that high shelf?
>
> A: Correct.
>
> Q: And that is the highest shelf; is that right?
>
> A: That's correct.

*Id.*, Ex. 4 (Dockery Dep. 26:19 – 27:6).

Typically when a business invitee is injured on a proprietor's premises, the business invitee has the burden of showing the proprietor "created the dangerous condition or had actual or constructive knowledge of its existence." *Moulden*, 239 Md. at 232, 210 A.2d at 76. Mr. Curry fails to meet this burden. Mr. Curry has not presented any evidence that a J. C. Penney employee created the dangerous condition of stacking the top shelf with a cookware box weighing approximately 40 pounds in an unsafe

10

manner. Furthermore, Mr. Curry has not presented any evidence showing J. C. Penney had actual or constructive knowledge of the danger caused by a cookware box being placed on the top shelf in an unsafe manner, possibly by another customer,[2] before the cookware box fell from the shelf striking Mr. Curry. Because Mr. Curry is unable to prove the second element, *i.e.*, a breach of duty by J. C. Penney, Mr. Curry is unable to prove a *prima facie* case of negligence.

C.   Res Ipsa Loquitur

In his Opposition Mr. Curry acknowledges J. C. Penney is correct in arguing that the mere happening of an accident does not mean someone was negligent. Mr. Curry's claim of negligence is not barred however. Mr. Curry asserts he is able to establish a *prima facie* case of negligence by relying on the doctrine of *res ipsa loquitur*.

*Res ipsa loquitur* gives a plaintiff an opportunity to establish a *prima facie* case of negligence when a plaintiff is otherwise unable to establish negligence by the traditional requirements of proof. *Dover Elevator Co. v. Swann*, 334 Md. 231, 236, 638 A.2d 762, 765 (1994). A jury is permitted but not required to infer negligence by a defendant in the absence of any direct evidence. Under Maryland law a plaintiff must establish three elements to successfully rely on the doctrine of *res ipsa loquitur*.

> 1. A casualty of a sort which usually does not occur in the absence of negligence.
>
> 2. Caused by an instrumentality within the defendant's exclusive control.

---

[2] If, in fact, another customer had pulled the cookware box partially or completely off the shelf and then placed the box back on the top shelf but not in a safe manner, then the facts of this case would be analogous to cases where patron A spills or drops a liquid and, before the owner becomes aware of the hazard, patron B slips and falls. In such cases the Maryland courts have routinely held that the owner had insufficient time to discover and cure the dangerous condition and thus the owner is not liable. *See Montgomery Ward & Co., Inc. v. Hairston*, 196 Md. 595, 597, 78 A.2d 190, 191 (1951); *Maans v. Giant of Maryland, L.L.C.*, 161 Md. App. 620, 632-33, 871 A.2d 627, 634 (2005); *Rehn v. Westfield America*, 153 Md. App. 586, 593, 837 A.2d 981, 984 (2003).

> 3. Under circumstances indicating that the casualty did not
> result from the act or omission of the plaintiff.

*Id.* at 236-37, 638 A.2d at 765 (*Meda v. Brown*, 318 Md. 418, 423, 569 A.2d 202, 204 (1990) (quoting *C & P Tel. Co. v. Hicks*, 25 Md. App. 503, 516, 337 A.2d 744, 752 (1975), in turn quoting *Leikach v. Royal Crown*, 261 Md. 541, 547-48, 276 A.2d 81, 84 (1971)).

In this case Mr. Curry has not offered any expert opinion or any explanation about why or how the cookware box fell on his head. J. C. Penney argues Mr. Curry would need an expert to render an opinion about how the shelves were installed or improperly maintained in order to assist the trier of fact in resolving a complex and complicated matter. J. C. Penney claims Mr. Curry is asserting a design defect or a defect in stacking boxes, issues involving construction and engineering, which would necessitate an expert. Since Mr. Curry has not designated an expert, J. C. Penney contends Mr. Curry lacks evidence to support his claim of negligence.

In his Amended Complaint Mr. Curry does plead specific acts of negligence, namely, negligently stacking cookware boxes in an unsafe manner, failing to warn customers of the dangerous condition or failing to remedy the dangerous condition in a reasonable period of time. Pleading specific acts of negligence does not preclude a plaintiff from relying on the doctrine of *res ipsa loquitur*. *Holzhauer v. Saks & Co.*, 346 Md. 328, 333, 697 A.2d 89, 91 (1997). Although Mr. Curry has asserted various acts of negligence, the Court finds Mr. Curry is not attempting to establish the specific grounds of J. C. Penney's negligence.

> A plaintiff's reliance on *res ipsa loquitur* is generally
> necessitated, therefore, by the fact that direct evidence of

> negligence is either lacking or solely in the hands of the defendant.  As stated by this Court in *Peterson v. Underwood*, 258 Md. 9, 19, 264 A.2d 851, 856 (1970), "relaxation of the normal rules of proof is thought to be justified because the instrumentality causing injury is in the exclusive control of the defendant, *and it is assumed he is in the best position to explain how the accident happened.*" (Emphasis added).  Antithetically, numerous Maryland cases have explained that a plaintiff's "attempt to establish specific grounds of alleged negligence precludes recourse to the doctrine of *res ipsa loquitur*." *Smith v. Bernfeld*, 226 Md. 400, 409, 174 A.2d 53, 57 (1961).

*Swann*, 334 Md. at 237, 638 A.2d at 765.

If Mr. Curry had retained an expert who opined that J. C. Penney improperly installed the shelves, improperly maintained the shelves or improperly placed heavy boxes on top of a shelf incapable of supporting such a weight, such an opinion would be proffering direct evidence of negligence.  Mr. Curry has not attempted to prove the details of how the accident occurred.  He has not presented any direct evidence of negligence.  Mr. Curry therefore is entitled to rely on the doctrine of *res ipsa loquitur*.

Mr. Curry bears the burden of proof in establishing negligence via the doctrine of *res ipsa loquitur*.  There are two components to the burden of proof.

> The term burden of proof is used in two senses.  The first is often called the burden of going forward with evidence and it means that if the plaintiff does not, in the first instance, introduce evidence on each element which is sufficient to warrant a finding in his favor, he will lose his case at the hands of the court (by nonsuit, directed verdict, or the like).  If the plaintiff has introduced sufficient evidence (before he rests his case) he has made out a prima facie case and is entitled to go to the jury.  His burden of going forward is met and drops out of the case.  Thus the burden of going forward with evidence is applied always by the court, never by the jury.  Burden of proof in the other sense does not come into play until a case is finally submitted to the jury (or court as trier of facts) for determination.

*Hicks*, 25 Md. App. at 523-24, 337 A.2d at 756 (1975 (quoting 9 Wigmore, *Evidence*, §§ 2485, 2487 (3d. ed. 1940).  The Court must first determine if Mr. Curry has met his burden of going forward with evidence.

Mr. Curry must establish the three elements of the doctrine of *res ipsa loquitur*. "The test for this proof, as it is for proof of negligence generally, is a preponderance of the evidence."  *Hicks*, 25 Md. App. at 530, 337 A.2d at 760.  Both parties agree ordinarily, in the absence of negligence, a cookware box would not fall from a shelf and strike a customer on the head.  Mr. Curry has established the first element of *res ipsa loquitur*.

The parties' viewpoints diverge as to the second element.  Mr. Curry argues he has satisfied the second element.

> [Mr. Curry] must be able to show that [J. C. Penney] or its agents were in exclusive control of the shelf, though [Mr. Curry] need not exclude every possible cause for the injury other than [J. C. Penney's] negligence, but must only show a greater likelihood that the injury was caused by [J. C. Penney's] negligence and not some other cause.  According to the assistant manager, [J. C. Penney's] agents stock this floor of the store.  It is solely the responsibility of [J. C. Penney's] agents and not some third party to do so.  Furthermore, we can rule out another customer as the cause, as [Mr. Curry] and [J. C. Penney] both are not aware of anyone in the area where this occurred, besides [J. C. Penney's] employees.  Even if there were other customers nearby, Mr. Dockery testified that it is common procedure for customers to ask for assistance and store employees to obtain a step ladder from storage to reach for these items.  Without question [Mr. Curry] can satisfy prong two.

Pl.'s Opp'n at 5-6 (citations omitted).

J. C. Penney contends Mr. Curry has failed to demonstrate J. C. Penney had exclusive control over the cookware box.

> The fact that [J. C. Penney] or its employees stock the store does not rise to the level of exclusive control. Customers are invited to inspect, remove, and replace merchandise on shelves, and customers commonly do inspect, remove, and replace merchandise on the shelves. It is just as likely, if not more so, that a customer negligently replaced merchandise on the shelf.
>
> Second, the fact that neither party is aware of anyone in the area does not exclude the possibility of a third party manipulating the merchandise prior to the incident.
>
> *      *      *
>
> Although J. C. Penney Corporate Designee Dockery agreed with [Mr. Curry's] counsel in his deposition that it is typical for customers to ask for assistance with items on higher shelves, it does not necessarily mean that customers do not attempt to reach things themselves. As anyone who has gone to a retail store is aware, customers often do things that are illogical or dangerous to obtain merchandise, such as climbing on shelves or jumping up to reach items that are out of their normal reach.

Def.'s Reply at 5-6.

J. C. Penney's corporate designee, Mr. Dockery, testified as follows.

> Q: The shelving unit where this occurred, did you get a chance to take a look at it when you arrived at the scene?
>
> A: Yes, I did.
>
> Q: Do you know how high it is, the actual shelf?
>
> A: The top shelf is approximately seven feet.
>
> Q: Okay. Can you reach up and touch an item that's on that shelf?
>
> A: Personally?
>
> Q: Yes.
>
> A: I can barely touch one – –

15

> Q: Okay.
>
> A: – – on the top shelf.
>
> Q: How tall are you?
>
> A: I'm probably – – I'd like to say five-ten, but probably five-nine and a quarter.
>
> \*          \*          \*
>
> Q: The shelf in question, you said that it would be difficult for you to reach up and touch the item on the shelf?
>
> A: I could probably reach the very bottom of the shelf. I'd have to actually stand on the bottom rung to get to the top.
>
> Q: Is that something you would expect the employees to do if they want to grab an item or is there a different procedure for grabbing items off that shelf?
>
> A: If somebody needs an item off the shelf, if an associate needs an item off the shelf, we do have stepladders that we keep in the stock room just to get access to this type area.
>
> Q: Is it typical that a customer would ask one of the associates for assistance to retrieve items on that shelf or the shelves that are that high?
>
> A: Yes.
>
> Q: Okay. And at that point an associate would go retrieve the stepladder and bring it out?
>
> A: That's when they would call for an MOD or somebody to assist them with that.
>
> Q: Is there any reason for you to believe that any other shopper may have adjusted the items on that shelf prior to the plaintiff coming there?
>
> A: I can't speak to that.

Pl.'s Opp'n, Ex. 4 (Dockery Dep. 9:13 – 10:7, 25:10 – 26:3).

What evidence has been presented by Mr. Dockery? The shelves at J. C. Penney are examined daily. This responsibility is shared by all J. C. Penney employees. Because of the height of the shelf at question in this incident, J. C. Penney employees, as a common practice, use step ladders to reach the top shelf. And, typically customers interested in an item placed on a high shelf will seek assistance from a J. C. Penney employee to have the item removed from a high shelf.

No direct evidence was elicited from Mr. Dockery regarding those circumstances when a customer wants an item from a high shelf but does not request assistance from a J. C. Penney employee. Neither was Mr. Dockery asked about any previous incident of a box falling from the shelf. Nor was Mr. Dockery questioned about any instances where a J. C. Penney employee observed a customer reaching for an item on a top shelf or attempting to replace an item on a top shelf. What appears clear to the Court is that customers do not request, in every instance, assistance from a J. C. Penney employee to retrieve merchandise from a top shelf. Although Mr. Dockery could not testify whether any other shopper may have adjusted the box of cookware on the shelf prior to Mr. Curry's arrival in the housewares department, what is apparent is that customers have access to merchandise stacked on shelves in the store including merchandise on top shelves.

The Court of Appeals of Maryland "has often held *res ipsa* to be inapplicable when the opportunity for third-party interference prevented a finding that the defendant maintained exclusive control of the injury-causing instrumentality." *Holzhauer*, 346 Md. at 337, 697 A.2d at 93. The Court finds J. C. Penney did not have exclusive control over the cookware box where customers have access to the shelf. Although Mr. Curry

17

testified that he did not attempt to touch the cookware box on the top shelf, his testimony reveals he, as a customer, had access to the merchandise.  The photographs of the shelf do not show any physical barrier shielding merchandise on the top shelf and thereby preventing customers from reaching for, removing or adjusting merchandise.  "The facts need not show that [another customer negligently replaced or adjusted the cookware box on the shelf] to preclude reliance on *res ipsa*; they need only show that something other than [J. C. Penney's] negligence was just as likely to cause [the cookware box to fall off the shelf]."  *Id.* at 336, 697 A.2d at 93.  Mr. Curry is unable to satisfy the second element of *res ipsa loquitur*.  It is therefore unnecessary for the Court to address the third element.[3]  Mr. Curry is unable to infer J. C. Penney's negligence based on the doctrine of *res ipsa loquitur*.

## **CONCLUSION**

For the foregoing reasons the Court finds there are no genuine issues as to any material fact and J. C. Penney is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  An Order will be entered separately.



| March 12, 2010 | /s/ |
|---|---|
| Date | WILLIAM CONNELLY |
| | UNITED STATES MAGISTRATE JUDGE |

---

[3] Regarding the third element J. C. Penney suggests Mr. Curry caused or contributed to his own injury.  *See* Pl.'s Opp'n, Ex. 2 (Defendant's Answer to Interrogatories.  "Interrogatory No. 5: Please state your version of the facts how the occurrence alleged in Plaintiff's complaint took place.  Answer: Plaintiff was reaching for a box of pots on a shelf, when he lost control of the box, causing it to fall on his head.").